**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

STEVEN WILLIAMS,

    Petitioner,

CASE NO: 00-CV-10502-BC

DISTRICT JUDGE DAVID M. LAWSON
MAGISTRATE JUDGE CHARLES BINDER

PAMELA WITHROW, Warden,

    Respondent.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
## ON PETITION FOR WRIT OF HABEAS CORPUS

### I.  RECOMMENDATION

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus be **DENIED.**

### II.  REPORT

On December 28, 2000, Petitioner Williams, a Michigan state prisoner currently confined at the Earnest G. Brooks Correctional Facility in Muskegon Heights, Michigan, filed through counsel a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. The petition raises three claims challenging Petitioner's 1997 state court convictions of first degree murder, assault with intent to murder, and felony firearm. Respondent filed a response in opposition to the petition and Rule 5 materials. (Dkts. 17 & 21.) Petitioner thereafter filed through counsel a reply. (Dkt. 30.) By order of U.S. District Judge David



M. Lawson, the matter was referred to the undersigned Magistrate Judge. (Dkt. 32.) Pursuant to E.D. Mich. LR 7.1(e)(2), the petition is ready for Report and Recommendation without oral argument.

## A. **FACTUAL BACKGROUND**

On November 19, 1995, twenty-six-year-old Landis Davis was shot and killed outside of the Blue Note Lounge located at 14421 Plymouth in the City of Detroit, Michigan. The events leading up to Davis's death were developed at trial as follows.

On the night of November 19, 1995, Anjorel Hammond ("Hammond") and his girlfriend Angela Hill ("Angela") met a group of relatives and friends, which included Hammond's cousin, Landis Davis ("Davis"), at the Blue Note to celebrate Angela's birthday. At approximately 1:45 a.m., one of Hammond's cousins by the name of Alvin Woodford ("Woodford") was attempting to return to his seat when another man in the bar refused to let him pass by, and words were exchanged. Davis went over to try and calm things down. The man who refused to let Woodford pass by was at the bar with a group of people that included Trenell Whitworth ("Whitworth"). Hammond and Davis had known Whitworth for years, so Davis went to Whitworth and told him, "you get your friends and you all go, and I get my friends, and we just go on about our business; you know, everybody go on back their own separate ways." (Tr. Trans. Vol. I at 103.) About this time, however, a drink was thrown that hit Davis in the forehead, and a physical fight broke out in the bar between the members of the two groups. At trial, Hammond identified Petitioner Williams as the man who both refused to let Woodford by and who threw the drink at Davis.

2

When the fight broke out, the bouncers stepped in and began throwing people out of the bar. Whitworth, Petitioner, and the rest of their group, which consisted of about seven or eight people, were ejected. (*Id.* at 106.) Davis, whose forehead was cut and bleeding from being hit in the head with the drink, remained extremely upset. One of the bouncers tried to calm him down, but couldn't, so the bouncer fired a gunshot into the floor.

Angela had left the bar sometime during the fight and brought the car around to the door. Hammond, Davis, and Woodford then exited the bar and were in the process of getting into the car's passenger-side doors when they saw a group of men standing directly across the street. (*Id.* at 111.) As Hammond was helping Woodford into the back seat of the car and Angela was helping Davis into the front seat, two of the men from across the street (identified at trial as Petitioner Williams and Trenell Whitworth) ran across the street toward the group, pulled out guns, and began shooting. Hammond testified that Petitioner kept shooting as he ran up to the car, leaned over the hood, and fired a few more shots in the direction of the passenger side. At this time everyone started running, and Hammond testified that when he ran around to the side of the bar, he heard his girlfriend, Angela, saying that Davis had been shot in the head. (*Id.* at 114.)

Hammond told Angela to keep running away, but he went back to the side of the bar where the car was located to find his cousin. When Hammond came around the corner, he saw Petitioner standing over his cousin, Landis Davis, who was lying on the ground. Petitioner was shooting his gun up into the air, and then he ran out of bullets. When Hammond saw Petitioner pop the clip out and reach in his back pocket for another clip, he

3

took off running. Petitioner chased him, shooting at him. Petitioner then jumped into a car and kept chasing Hammond, all the while shooting out the car window at him. Hammond testified that the shots were out of control because the car was traveling over speed bumps in the Blue Note's parking lot. (*Id.* at 117.) Hammond eventually came to a gate, which he jumped. He could hear sirens approaching, and he saw Petitioner's car turn and leave. Once the car was gone, Hammond testified that he went back to where Davis was lying on the ground, and found that the police were already blocking off the area. Hammond was hysterical and wanted to get to his cousin, but never did because he was arrested and transported by Lansing Police Officer Roy Harris to the Homicide Section. (*Id.* at 250.)

Angela Hill testified that after she brought the car up, she got out and went around to the passenger side to help Landis Davis into the car. His forehead was bleeding so badly that blood was dripping onto her clothes. (Tr. Trans. Vol. II at 40.) She then heard the shooting start, and looked up and saw Whitworth and Petitioner. Petitioner came up to the driver side of the car and shot four or five times. Davis was hit and "he just slid down the car." (*Id.* at 44.) On cross-examination, Angela testified that there was no doubt in her mind that it was Petitioner who shot Davis. (*Id.* at 47.)

In the days following the shooting, Hammond asked a friend who wasn't at the bar that night if he knew the name of Trenell Whitworth's best friend, and Hammond was given the name of Steve Williams. On December 7, 1995, Hammond was shown an array of photographs and asked if he could identify the shooter. Hammond picked Petitioner Steven Williams out of the photo array. (Tr. Trans. Vol. I at 125.) Hammond also attended two live

4

lineups. In one of those, he picked out Trenell Whitworth as another person who was shooting that night. (*Id.* at 236-37.) At the other lineup, the target was a suspect named Wendell Hightower, who apparently police believed was with Whitworth and Petitioner the night of the shooting, and may have also been carrying a gun. Hammond was not able to identify anyone in that lineup, although he stated that numbers three, four and five all "looked like" they could be him.

## B. **PROCEDURAL HISTORY**

Following a four-day jury trial, Petitioner was convicted of the first-degree murder of Landis Davis, MICH. COMP. LAWS § 750.316; assault with intent to murder with regard to Anjorel Hammond, MICH. COMP. LAWS § 750.83; and felony firearm, MICH. COMP. LAWS § 750.227(b). Petitioner was sentenced to concurrent terms of mandatory life imprisonment for the murder and assault, and a two-year consecutive term on the felony firearm conviction.

In 1998, Petitioner filed through counsel an appeal of right with the Michigan Court of Appeals, raising the following claims:

I.      THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN FAILING TO GIVE THE REQUESTED INSTRUCTIONS ON THE COGNATE LESSER INCLUDED OFFENSES OF VOLUNTARY MANSLAUGHTER, CARELESS, RECKLESS, OR NEGLIGENT USE OF A FIREARM WITH INJURY OR DEATH RESULTING, AND RECKLESS AND WANTON USE OF A FIREARM, THEREBY DENYING THE DEFENDANT THE RIGHT TO DUE PROCESS PURSUANT TO US CONST AMS V, XIV; AND MICH CONST 1963 ART 1, SEC. 17.

II.     THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ERRONEOUSLY INSTRUCTED THE JURY ON THE REQUISITE ELEMENTS OF FIRST DEGREE MURDER, SECOND DEGREE MURDER AND THE CONCEPT OF AIDING AND

5

ABETTING, THEREBY DENYING THE DEFENDANT THE RIGHT TO DUE PROCESS PURSUANT TO US CONST AMS V, VI, XIV; AND MICH CONST 1963 ART. I, SEC. 14, 17, AND 20.

III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT INSISTED ON INSTRUCTING THE JURY ON THE BASIS OF THE TRIAL COURT'S OWN MEMORY RATHER THAN RELYING ON THE STANDARD JURY INSTRUCTIONS, THEREBY RENDERING MANY OF THE COMPOSITE INSTRUCTIONS AND INSTRUCTIONS RELATING TO OTHER MATTERS OF THE CASE ERRONEOUS AS A MATTER OF LAW.

IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT IMPROPERLY DENIGRATED DEFENSE COUNSEL BEFORE THE JURY AND IMPROPERLY COMMENTED ON THE DEFENDANT'S DECISION NOT TO TESTIFY, THEREBY DENYING HIM THE RIGHT TO DUE PROCESS PURSUANT TO US CONST AMS V XIV; AND MICH CONST 1963, ART. 1, SEC. 17.

V. DEFENDANT WAS DENIED A FAIR TRIAL BY VIRTUE OF THE PROSECUTOR'S COMMENTS IN WHICH HE PERSONALLY VOUCHED FOR THE EVIDENCE IN THE CASE AND MADE ERRONEOUS COMMENTS ON THE CONCEPT OF REASONABLE DOUBT, THEREBY DENYING THE DEFENDANT THE RIGHT TO DUE PROCESS PURSUANT TO US CONST AMS V, XIV, AND MICH CONST 1963, ART. 1, SEC. 17

VI. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO ADMIT AS EVIDENCE A LINEUP SHEET AND LINEUP PHOTOGRAPH WHERE WITNESS HAMMOND MADE EQUIVOCAL IDENTIFICATIONS OF TWO INDIVIDUALS THAT WERE NOWHERE NEAR THE CRIME ON THE NIGHT IN QUESTION, THEREBY DENYING THE DEFENDANT THE RIGHT TO DUE PROCESS PURSUANT TO US CONST AMS V, XIV; AND MICH CONST 1963, ART. 1, SEC. 17.

VII. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED DEFENSE COUNSEL'S MOTION TO PERMIT EXPERT TESTIMONY ON THE ISSUE OF IDENTIFICATION, THEREBY DENYING THE DEFENDANT THE RIGHT TO DUE

6

> PROCESS PURSUANT TO US CONST AMS V, XIV; AND MICH
> CONST 1963 ART. 1, SEC. 17.

VIII. THE IMPOSITION OF A LIFE SENTENCE ON DEFENDANT'S
ASSAULT WITH INTENT TO MURDER CONVICTION IS
GROSSLY DISPROPORTIONATE IN LIGHT OF THE OFFENSE
AND THE OFFENDER SINCE IT EXCEEDS THE TOP END OF
THE SENTENCING GUIDELINES RANGE AND AMOUNTS TO
THE ABSOLUTE MAXIMUM SENTENCE ALLOWABLE UNDER
LAW, THEREBY DENYING HIM THE RIGHT TO DUE PROCESS
AT SENTENCING PURSUANT TO US CONST AMS V, VI, XIV;
AND MICH CONST 1962, ART. 1, SEC. 16, 17.

(Rule 5 Mat., Defendant-Appellant's Br. on Appeal dated Jan. 13, 1998.)

The Michigan Court of Appeals affirmed in an unpublished six-page opinion. (Rule

5 Mat., *People v. Williams*, No. 204918 (Mich. Ct. App. April 13, 1999) (per curiam).)

Petitioner thereafter filed a Delayed Application for Leave to Appeal with the Michigan

Supreme Court, raising all of the same claims raised before the Court of Appeals. (Rule 5

Mat., Delayed Appl. for Lv. to Appeal filed May 26, 1999.) In December 1999, the

Michigan Supreme Court denied leave to appeal, stating that it was "not persuaded that the

questions presented should be reviewed by this Court." (Rule 5 Mat., *People v. Williams*,

No. 114768 (Mich. Dec. 28, 1999) (unpublished order).)

On December 28, 2000, Petitioner filed through counsel the instant Petition for Writ

of Habeas Corpus, raising the following three issues:

I. PETITIONER WILLIAMS' DEFENSE WAS MISIDENTIFICATION.
THE STATE COURT JUDGE DID NOT ALLOW PROFFERED
TESTIMONY FROM A DEFENSE EXPERT CONCERNING THE
INHERENT RISK OF EYEWITNESS IDENTIFICATION. THE
TRIAL JUDGE ALSO PROHIBITED IMPEACHMENT OF A
PROSECUTION WITNESS' IDENTIFICATION TESTIMONY. AS
A RESULT, PETITIONER WILLIAMS WAS PRECLUDED FROM

7

PRESENTING HIS DEFENSE TO THE JURY AND WAS THEREBY DENIED HIS DUE PROCESS RIGHT TO A FAIR TRIAL.

II.     FOLLOWING A BAR ROOM BRAWL WHICH INCLUDED A GUNSHOT, FISTFIGHTS, THROWN BOTTLES AND GLASSES, THE DECEDENT WAS SHOT OUTSIDE THE BAR. THE TRIAL JUDGE'S REFUSAL TO GIVE A TIMELY REQUESTED JURY INSTRUCTION ON VOLUNTARY MANSLAUGHTER PREVENTED THE JURY FROM CONSIDERING MANSLAUGHTER AS AN ALTERNATE DEFENSE. PETITIONER WILLIAMS' FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO A FAIR TRIAL WERE THEREBY VIOLATED.

III.    THE TOTALITY OF THE STATE TRIAL JUDGE'S INCOMPLETE AND INCORRECT JURY INSTRUCTIONS, INCLUDING, BUT NOT LIMITED TO: THE ELEMENTS OF FIRST AND SECOND DEGREE MURDER; SPECIFIC INTENT; REASONABLE DOUBT; AND AIDING AND ABETTING, DENIED PETITIONER WILLIAMS HIS FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS AND FAIR TRIAL RIGHTS.

(Pet., Dkt. 1 at ii-iii.)

## C. **LAW and ANALYSIS**

### 1.  **Standard of Review**

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), govern this case because Petitioner filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 117 S. Ct. 2059, 2063, 138 L. Ed. 2d 481 (1997).

The AEDPA altered the standard of review that a federal court must use when reviewing applications for the writ of habeas corpus. *See Felker v. Turpin*, 518 U.S. 651, 116 S. Ct. 2333, 2335, 135 L. Ed. 2d 827 (1996), *reh'g denied*, 518 U.S. 1047, 117 S. Ct. 25, 135

8

L. Ed. 2d 1119 (1996); *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997). The standard

of review now provides that:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of
> the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA's standard of review gave rise to different interpretations among the

circuits until the United States Supreme Court illuminated its meaning. In *Williams v.*

*Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000), the Court held that a state

court decision is "contrary to" Supreme Court precedent "if the state court arrives at a

conclusion opposite to that reached by [the Supreme] Court on a question of law," or "if the

state court confronts facts that are materially indistinguishable from a relevant Supreme

Court precedent" and arrives at a different result. *Id.* at 1519. Additionally, a state court

decision involves an "unreasonable application" of Supreme Court precedent "if the state

court identifies the correct governing legal rule from [the Supreme] Court's cases but

unreasonably applies it to the facts of the particular . . . case" or if the state court either

unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court

precedent to a new context. *Id.* at 1520. The reasonableness of the state court's opinion is judged by an objective rather than subjective standard. *See id.* at 1521-22.

Pursuant to the AEDPA, this Court must also presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## 2. Habeas Claim I

Petitioner's initial claim is two-fold and concerns the issue of identification. First, he alleges that his federal constitutional rights were violated when the trial court refused to allow testimony by an expert witness regarding the inherent unreliability of eyewitness identifications. Second, Petitioner claims that the trial court's refusal to admit into evidence a lineup sheet and a photograph of a lineup prevented him from impeaching the credibility of an eyewitness, which constituted a denial of Petitioner's federal due process right to a fair trial.

### a. State Court Record

The Michigan Court of Appeals ruled on these claims as follows:

> Defendant . . . claims that the trial court abused its discretion because it did not admit a lineup sheet or a photograph of a lineup into evidence. We disagree. The admission of evidence is within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *People v. Warren*, 228 Mich App 336, 341; 578 NW2d 692 (1998).

> MRE 103(a) requires that error cannot be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. Here, defendant cannot show that a substantial right of his was affected. Although the trial court did not admit the lineup sheet or photograph into

10

evidence, the substance of the lineup sheet and photograph were admitted into evidence through the testimony of a witness at trial.

Defendant's next claim of error on appeal is that the trial court erred when it refused to allow defendant to present an expert witness on the issue of identification. We disagree. A trial court's decision whether to admit expert testimony is reviewed for an abuse of discretion. *People v. Daoust*, 228 Mich App 1, 10; 577 NW2d 179 (1998).

Before permitting expert testimony, a trial court must find that the evidence is from a recognized discipline, relevant and helpful to the trier of fact, and presented by a qualified witness. *Daoust, supra*, 228 Mich App 9-10. In the present case, the trial court determined that expert testimony on identifications would not assist the jury. The trial court was of the opinion that the jury was quite capable of determining the credibility of the identification testimony without the aid of an expert. The trial court did not abuse its discretion in reaching this conclusion.

(Rule 5 Mat., *People v. Williams*, No. 204918 (Mich. Ct. App. April 13, 1999) (unpublished

per curiam).)

## b. Expert Witness Claim

Respondent asserts that Petitioner did not exhaust his claim regarding the exclusion of the expert witness in the Michigan courts because, although he asserted in the heading of the claim in his state court brief that he was deprived of due process under the U.S. Constitution, the body of the argument contained only citations to Michigan law and asserted merely that the trial judge abused his discretion under Michigan law.

The exhaustion doctrine requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts by citing "a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns." *Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995).

11

General allegations of the denial of rights to a "fair trial" or to "due process" are not sufficient to fairly present a federal constitutional claim. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). In order to satisfy the exhaustion requirement, the claim presented in the habeas petition must be the "substantial equivalent" of the claim presented to the state, both in terms of the facts relied upon and the legal arguments set forth. *Picard v. Connor*, 404 U.S. 270, 278, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Franklin v. Rose*, 811 F.2d 322, 324-25 (6th Cir. 1987). The exhaustion requirement is codified in the AEDPA, which states that the writ of habeas corpus "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A). However, the Supreme Court has held that the exhaustion rule is not a jurisdictional requirement, *see Castille v. Peoples*, 489 U.S. 346, 349, 109 S. Ct. 1056, 103 L. Ed. 2d 380 (1989), and therefore the AEDPA also provides that a federal court may deny a habeas petition on the merits notwithstanding the petitioner's failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

Petitioner contends that the exhaustion requirement has been met. Petitioner directs the Court's attention to his brief on appeal before the Michigan Court of Appeals, and particularly to its reliance on *People v. Anderson*, 205 N.W.2d 461 (Mich. 1973). Petitioner claims that the appeal brief's citation to *Anderson* satisfies the exhaustion requirement because the *Anderson* case relied upon U.S. Supreme Court precedent.

In *Anderson*, the Michigan Supreme Court held that, in situations when it is necessary to use photographs for purposes of identifying an in-custody defendant accused of a crime,

12

the accused has the right to counsel just as he would if he were participating in a corporeal lineup. In analyzing the issues in *Anderson*, the Michigan Supreme Court cited and discussed the rules set forth by the U.S. Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149 (1967), and its progeny. In *Wade*, the Supreme Court held that a post-indictment lineup is a critical stage of a prosecution and therefore criminal defendants have a constitutional right to be represented by counsel when participating in such a lineup. The Court based the *Wade* holding in large part upon the opportunity during a lineup for improper police suggestion of the target suspect, in combination with the defendant's subsequent inability to recreate a lineup's conditions at trial for purposes of cross-examination. The Court did not premise its holding upon "the general unreliability of eyewitness identifications nor the difficulties inherent in observation, recall, and recognition." *Id.* at 251.

I suggest that Petitioner's citation in his state court brief to the *Anderson* case is not sufficient for purposes of exhaustion because *Anderson* cannot be considered a "state decision[] employing constitutional analysis *in [a] similar fact pattern*[]." *Hannah*, 49 F.3d at 1196 (emphasis added). To the contrary, the facts at issue in *Anderson* are not similar to the relevant facts here, nor was the legal issue in *Anderson* – whether a criminal defendant has a right to counsel during a photographic showup – in any way related to the issue presented here – whether Petitioner has a federal constitutional right to present an expert witness at trial on the issue of the inherent unreliability of eyewitness identifications. Accordingly, I suggest that this claim was not exhausted in the state courts. However, I

further suggest that in the interests of comity, federalism, and judicial economy, the Court should proceed to address the merits of Petitioner's claim without requiring further state court proceedings because the claim does not provide the basis for habeas relief. 28 U.S.C. § 2254(b)(2).

Petitioner is entitled to federal habeas relief on the basis of this claim if he can show that the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Petitioner has not directed the Court's attention to any Supreme Court case concerning a defendant's right to expert testimony on the issue of eyewitness unreliability, but rather to two Sixth Circuit opinions.[1] (*See* Br. in Supp. of Pet., Dkt. 1 at 12.) The AEDPA's standard of review, however, "prevents the district court from looking to lower federal court decisions in determining whether the state court decision is contrary to, or an unreasonable application of, clearly established federal law." *Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir. 2000) (quoting *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)). Rather, a habeas court is only to consider "holdings of the Supreme Court . . . as of the time of the relevant state court decision." *Harris*, 212 F.3d at 944 (citing *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)). *Accord Mitzel v. Tate*, 267 F.3d 524, 531 (6th Cir. 2001).

---

[1]In the Sixth Circuit opinions cited by Petitioner, *United States v. Smith*, 736 N.2d 1103 (6th Cir. 1984), and *United States v. Smithers*, 212 F.3d 306 (6th Cir. 2000), the Sixth Circuit was directly reviewing criminal convictions handed down in federal district courts. Neither case involved habeas review of a state court conviction, and therefore the court was applying a different standard of review than that which applies here.

14

Furthermore, it is well-settled that alleged trial court errors in the application of state procedure or evidentiary law, particularly regarding the admissibility of evidence, are generally not cognizable as grounds for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 79 L. Ed. 2d 29 (1984). Only where the challenged evidence ruling rendered the trial "so fundamentally unfair as to constitute a denial of federal rights" may it provide grounds for granting a writ of habeas corpus. *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir.1994). "The test for determining whether an erroneous evidentiary ruling by a state court denied a habeas petitioner a fair trial centers on whether the excluded evidence would have created a reasonable doubt that did not otherwise exist." *Harris v. Stegall*, 157 F. Supp. 2d 743, 748 (E.D. Mich. 2002) (citing *McLean v. McGinnis*, 29 F. Supp. 2d 83, 93 (E.D.N.Y. 1998)).

In this case, I suggest that the excluded expert testimony would not have created a reasonable doubt that did not otherwise exist, in light of the fact that Petitioner was not just identified by one eyewitness, but by five. First, Anjorel Hammond, the victim's cousin, identified Petitioner from a photo array he was shown eighteen days after the shooting (Tr. Trans. Vol. I at 124), and stated at trial, "I will never in my life forget his face." (*Id.* at 222.) Angela Hill, Hammond's girlfriend, who was in the bar when the fight broke out and next to the victim when he was shot, also identified Petitioner out of a photo array, stating "The only one I see that looks like him is number 6" (Tr. Trans. Vol. II at 46), and testified at trial that she had no doubt that Petitioner was the man who shot Landis Davis. (*Id.* at 46-47.)

Alvin Woodford, also a cousin of the victim, identified Petitioner as the person who refused to let him by in the bar (*id.* at 106), and as the person who ran across the street shooting right before Davis was shot, although Woodford testified that he did not actually see the fatal shot because he ducked down behind the car and then ran. (*Id.* at 111-13.) Juan Morris, the parking lot attendant at the Blue Note that night, identified Petitioner as one of the men he saw with a gun just after the shooting occurred. (*Id.* at 151.) Finally, Maurice Traylor, a patron at the bar that night who did not know any of the people involved in the fight or in the shooting, identified Petitioner as one of the people he saw fighting in the bar (Tr. Trans. Vol. III at 72), one of the two shooters he saw running across the street with a gun toward the people getting into their car (*id.* at 76), and as the person who shot the victim after he was already on the ground. (*Id.* at 76 and 79.)

Petitioner's counsel extensively cross-examined each eyewitness and pointed out to the jury that many of the details of the night's events as told by the eyewitnesses were inconsistent. Further, defense counsel impeached several of the witnesses with discrepancies between their trial testimony and prior statements, either to police in the hours after the shooting or at earlier court proceedings. The trial judge determined that the jury, who had the responsibility of weighing this evidence and assessing the credibility of the witnesses, as well as the reliability of their identifications, had the capacity to make these determinations without the help of an expert witness. Under both Michigan and federal law, the trial court has the discretion to determine whether such an expert would be helpful to the jury. *See United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir. 1999) ("The trial judge has broad

16

discretion to admit or exclude expert testimony, based upon whether it is helpful to the trier of fact."); *Moore v. Tait*, 882 F.2d 1107, 1110-1111 (6th Cir. 1989); *People v. Daoust*, 577 N.W.2d 179 (Mich. Ct. App. 1998). Here, where Petitioner was identified by five eyewitnesses, two of whom had no ties to either Petitioner or the victim, but just happened to be at the bar that night, it cannot be said that, had the trial court admitted the proposed expert testimony on the inherent unreliability of eyewitness identifications, it would have created a reasonable doubt that did not otherwise exist. Thus, I suggest that the exclusion of the evidence did not render Petitioner's trial unfair, that the Michigan appellate court's holding was reasonable, and that this claim does not entitle Petitioner to habeas relief.

### c.  Evidence Claim

Petitioner also takes issue with the trial court's exclusion of a lineup sheet and a photograph of a lineup, which allegedly prevented his trial counsel from impeaching the credibility of Anjorel Hammond and therefore denied Petitioner his federal due process right to a fair trial. Respondent once again asserts that this claim was not exhausted because it was not fairly presented as a federal claim to the Michigan courts. (Dkt. 17 at 27-28.) Once again, I suggest that the claim should be addressed notwithstanding the lack of exhaustion because it does not entitle Petitioner to relief. 28 U.S.C. § 2254(b)(2).

Several witnesses told police that there was a third man with a gun outside the Blue Note Lounge on the night in question. Police suspected one Wendell Hightower to be the third gunman, and the lineup at issue here was the one in which Wendell Hightower participated. Anjorel Hammond went to the police department to view the lineup on

17

November 29, 1995, and an attorney was present for the purpose of ensuring that the lineup was conducted properly. Seymour Posner was that attorney, and he was called to testify on behalf of the defense at Petitioner's trial. He explained that he periodically signs up to monitor a day of lineups, and this was one of those days. Attorney Posner used a form to make notes of what occurred at each lineup, including this one, and he also kept a picture of the six people who appeared in the lineup, one of which was Hightower. At trial, Attorney Posner testified that his notes on the lineup form indicate that Anjorel Hammond, upon viewing the lineup, said, "Looks like three, four or five." (Tr. Trans. Vol. III at 66.) In Posner's opinion, this statement meant that Hammond failed to make any positive identification. (Id.)

Petitioner's trial counsel endeavored to use this evidence to attack the credibility of witness Anjorel Hammond. Counsel wanted to argue that Anjorel Hammond's statement as recorded by Attorney Posner was an identification of three men, none of which were Petitioner, as the three gunmen, and thereby discredit the reliability of Hammond's identification of Petitioner as the gunman who shot Landis Davis. The trial court expressed its view that Hammond's statement that numbers "three, four or five" in the lineup "look like" one of the gunmen from outside the Blue Note did not rise to the level of an identification at all. Further, on the admissibility of the lineup sheet itself and the photograph of the subjects who participated in the lineup, the court ruled:

Court:     That a person went to a line-up and failed [to] identify a third person who is not even charged, it has nothing to do with anything. [The jury] heard the testimony, it's in, the jury heard that but that line-up sheet is not relevant.

18

Prosecutor:  As well as the photograph?

Court:  The photograph also is not admissible. If he had gone to a line-up and the subject of the line-up had been the defendant and he had said it looks like him, that would have been an impeachable statement. They weren't – the defendant, they weren't looking for him, they were looking for another person. And it's stated on the [sheet] it was Hightower, whoever that is. And I don't know how in the world failure to identify Hightower in any way impeaches the identification of the defendant, it does not do anything.

(Tr. Trans. Vol. III at 67-68.)

Petitioner argues that exclusion of the lineup sheet and the photograph prevented the defense from subjecting the prosecution's case to vigorous adversarial testing, citing *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). In *Cronic*, a criminal defendant appealed his federal mail fraud convictions on the ground of ineffective assistance of counsel, and the Tenth Circuit Court of Appeals reversed the convictions. The Supreme Court reinstated the convictions, holding that the appeals court improperly inferred the ineffectiveness of counsel, rather than finding that an actual breakdown of the adversarial process had occurred. In so holding, the Court stated that "[t]he right to the effective assistance of counsel is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." *Id.* at 656.

In this case, the claim is that the trial court's evidentiary ruling, rather than the defense counsel's performance, violated the accused's right to put the prosecution's case through the crucible of meaningful adversarial testing. Respondent counters that, where the substance of an excluded document was nevertheless admitted at trial through the testimony of various

19

witnesses, there was no harm and therefore Petitioner cannot show that his rights were violated. In support, Respondent cites *United States v. Seago*, 930 F.2d 482, 494-95 (6th Cir. 1991), where the Sixth Circuit found no reversible error in a trial court's exclusion of a financial statement in light of the fact that a witness used the document during trial to testify as to the content of the document. I suggest that Respondent is correct. The record in this case shows that even though the trial court excluded the physical documents relating to the Hightower lineup, Petitioner's counsel was nevertheless allowed to put the facts of the lineup into evidence through the testimony of both Anjorel Hammond and Seymour Posner. The jury learned that Hammond attended the Hightower lineup, and Posner testified as to the words written on the lineup sheet which were spoken by Hammond when he viewed the lineup. Furthermore, Petitioner's counsel cross-examined Hammond on this subject as well. The record therefore demonstrates that, despite the trial court's exclusion of the documents, Petitioner's counsel was afforded the opportunity to conduct meaningful adversarial testing on this issue.

Accordingly, I suggest that the state court's denial of this claim and its finding that Petitioner failed to show that a substantial right of his was affected was neither contrary to federal law nor an unreasonable application thereof, and therefore does not entitle him to habeas relief.

### 3. Habeas Claim II

Petitioner's next claim is that the trial judge's refusal to give a jury instruction on the cognate offense of voluntary manslaughter violated Petitioner's Fifth and Fourteenth

Amendment rights to a fair trial. At the close of trial, Petitioner's counsel argued that the

evidence supported a charge of voluntary manslaughter because Petitioner had been

provoked into the heat of passion by the altercation that occurred inside the Blue Note

Lounge prior to the shooting. The trial court ruled as follows:

> [H]ere we have not only a person who was shot after several shots were fired,
> but shot in the chest; but according to the medical examiner he was shot again
> in the back of the head, a coup de grace, and also done after these people had
> left the place, gotten into a car and was leaving the scene.
>
> There's been no indication, no evidence whatsoever that the person who
> was killed had done anything whatsoever to anybody to provoke anyone to
> take any action. There hasn't been one iota of any evidence that [the] person
> presented a danger, that he presented a weapon to anyone, or that he did
> anything, any action whatsoever that would provoke a person to take his life.
> Manslaughter under any circumstances in this case will not be appropriate.
> The Court will decline to instruct the jury on Manslaughter.

(Tr. Trans. Vol. III at 128.)

## a. State Court Record

This claim was presented to the Michigan Court of Appeals in Petitioner's direct

appeal. The state appellate court ruled on the claims as follows:

> Voluntary manslaughter is a cognate lesser included offense of murder.
> *People v. Cheeks*, 216 Mich App 470, 479; 549 NW2d 584 (1996). A trial
> court must give an instruction for a cognate lesser included offense if: (1) the
> principal offense and the lesser offense are of the same class or category, and
> (2) the evidence adduced at trial would support a conviction of the lesser
> offense. *Id.* To give the instruction, there must be more than a modicum of
> evidence supporting the lesser offense; sufficient evidence must be present so
> that the defendant could be convicted of the lesser offense. *Id.*
>
> Our review of the lower court proceedings reveals that there was not
> sufficient evidence to support an instruction on voluntary manslaughter,
> because there was no evidence presented to show that defendant was
> adequately provoked. Adequate provocation is an element of the crime of

21

voluntary manslaughter. *People v. Pouncey*, 437 Mich 382, 388; 471 NW2d 346 (1991). Here, defendant claims that the fight in the Blue Note Lounge, coupled with the shot fired, was enough to satisfy the element of adequate provocation. We disagree. Although objects were thrown during a fight, the evidence established that the only person who threw anything was defendant. Furthermore, although a shot was fired inside of the bar, the shot was fired by someone unconnected with this incident, not by the victim. The trial court correctly refused to instruct the jury on voluntary manslaughter.

(Rule 5 Mat., *People v. Williams*, No. 204918 (Mich. Ct. App. April 13, 1999)(unpublished per curiam).)

### b. Discussion

As previously stated, this Court may only grant a writ of habeas corpus if the state court's adjudication of Petitioner's claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law as determined by U.S. Supreme Court precedent which was in effect at the time of the state court's ruling, or if the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1),(2). Petitioner here claims that the state court's decision was both contrary to Supreme Court precedent and based upon an unreasonable determination of the facts presented at trial. (Br. in Supp. of Pet., Dkt. 1 at 25-26.)

In *Beck v. Alabama*, 447 U.S. 625, 100 S. Ct. 2382, 65 L. Ed. 2d 392 (1980), the Supreme Court held in a capital case that the Eighth Amendment and the Due Process Clause require a trial court to *sua sponte* instruct the jury on lesser-included offenses, so that the jury is not given an "all or nothing" choice of convicting on the capital charge or acquitting the

defendant.[2] *Id.* at 637-38. Petitioner, however, has cited no Supreme Court precedent that was in effect in 1999 when the Michigan Court of Appeals denied his appeal that established a criminal defendant's right in a non-capital case to a jury instruction on a cognate offense, nor has this Court's research uncovered such a case. To the contrary, the Supreme Court held in 1998 that, even in a capital case, there is no constitutional right to a jury instruction if the requested charge does not satisfy the legal definition of a lesser-included offense. *Hopkins v. Reeves*, 524 U.S. 88, 118 S. Ct. 1895, 141 L. Ed. 2d 76 (1998). "The common law definition of lesser-included offenses is that the lesser must be such that it is impossible to commit the greater without first having committed the lesser." *People v. Jones*, 236 N.W.2d 461, 464 (Mich. 1975). In other words, "the elements of the lesser offense [must be] identical to part of the elements of the greater offense . . . ." *U.S. v. Colon*, 268 F.3d 367, 373 (6th Cir. 2001). Cognate offenses do not meet the definition of lesser-included offenses, because they are "related and hence 'cognate' in the sense that they share several elements, and are of the same class or category, but may contain some elements not found in the higher offense." *Id.* Accordingly, Petitioner had no federal constitutional right to a voluntary manslaughter instruction, and therefore the state court's adjudication of the claim was not contrary to Supreme Court precedent, and Petitioner has failed to show entitlement to relief under 28 U.S.C. § 2254(d)(1).

---

[2] In 1990, the Sixth Circuit held that neither *Beck* nor the Constitution itself requires a lesser-included offense instruction in a non-capital case. *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc), *cert. denied*, 496 U.S. 929, 110 S. Ct. 2626, 110 L. Ed. 2d 646 (1990).

23

Petitioner also claims that the Michigan court's decision was based upon an unreasonable determination of the facts in light of the evidence produced at trial on the issue of provocation. Petitioner asserts that the evidence showed that immediately prior to the shooting, he and his friends were involved in a fight with the decedent and his friends during which Petitioner was struck in the face by Alvin Woodford. Petitioner asserts that this fact could lead a reasonable jury to conclude that Petitioner was provoked and acted in the heat of passion when he shot Landis Davis, and therefore a voluntary manslaughter instruction should have been given.

I suggest that the record reveals that neither the trial court nor the court of appeals engaged in an unreasonable determination of the facts, but rather they reasonably applied the undisputed facts to the elements of Michigan's crime of voluntary manslaughter and found that the instruction was not warranted. One element of voluntary manslaughter is that the defendant was adequately provoked, *see People v. Pouncey*, 471 N.W.2d 346 (Mich. 1991), and in this case there was no evidence proffered at trial to suggest that Landis Davis did anything to provoke Petitioner. To the contrary, the trial testimony established that it was Petitioner who instigated the fight in the bar, and it was Petitioner who threw a drink at Davis. Not one witness testified that Landis Davis ever took any action toward Petitioner which could have provoked him into lethal retaliation, and therefore the Michigan courts found that the element of adequate provocation was missing. This Court is required to accord due deference to the state courts' application of state law. *See Estelle v. McGuire*,

24

502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Furthermore, I suggest that the record shows that the state courts did not unreasonably determine the facts with regard to this claim, because no evidence of provocation sufficient to mitigate the murder charge down to manslaughter was offered at trial. For this reason, I suggest that Petitioner is not entitled to a writ of habeas corpus under 28 U.S.C. § 2254(d)(2).

### 4. Habeas Claim III

Petitioner's final claim is that the cumulative effect of errors in the jury instructions given by the trial court amounted to constitutional error. Petitioner's trial judge did not use the Michigan Standard Criminal Jury Instructions. Petitioner claims that: (1) the trial court's instructions on the burden of proof, the presumption of innocence, and the reasonable doubt standard improperly shifted the burden of proof; (2) the court told the jury that first-degree murder was a specific intent crime, but then failed to define specific intent; (3) the court's instruction on aiding and abetting did not articulate the level of intent necessary; (4) the first-degree murder instruction confused the meaning of premeditation and deliberation; and (5) the second-degree murder instruction omitted the element of malice.

#### a. State Court Record

On direct appeal, the Court of Appeals found that several of Petitioner's jury instruction claims had not been preserved for appellate review:

Defendant . . . argues that the trial court erred because it did not properly instruct the jury on the term deliberation and that it also did not properly explain the malice element of second-degree murder. We disagree. Defendant has failed to preserve these claims of error for appellate review because no

25

objection was raised before the trial court, *People v. Curry*, 175 Mich App 33, 39; 437 NW2d 310 (1989), and review is foreclosed absent manifest injustice. *People v. Kuchar*, 225 Mich App 74, 78; 569 NW2d 920 (1997). There is no manifest injustice here. The trial court's instructions on deliberation and the malice element of second-degree murder fairly presented the issues to the jury and sufficiently protected defendant's rights.

. . . .

Defendant also claims that the trial court's instructions to the jury erroneously informed it that if the prosecution proved its case beyond a reasonable doubt, then the jury had to find defendant guilty. Defendant's argument regarding this instruction has not been properly preserved for appellate review. Although defendant did object to this instruction, he fails to cite any authority to support his position on appeal, and therefore, the issue is waived. *People v. Pena*, 224 Mich App 650, 664; 569 NW2d 871 (1997), *mod on other grounds* 457 Mich 883 (1998). Furthermore, defendant fails to argue the merits of this claim of error on appeal. *People v. Jones* (on remand), 201 Mich App 449, 456-457; 506 NW2d 542 (1993). In any case, we find no error.

(Rule 5 Mat., *People v. Williams*, No. 204918 at 3 (Mich. Ct. App. April 13, 1999)

(unpublished per curiam).) Regarding the instructions on aiding and abetting, burden of

proof, reasonable doubt, and specific intent, the Michigan Court of Appeals found no error:

Defendant next claims that the trial court's instructions on the intent element of aiding and abetting were erroneous. We disagree. Our review of the lower court record demonstrates that the trial court properly instructed the jury that a finding of aiding and abetting could be made only if the jury found that defendant or his accomplice knew that the other had the specific intent to commit a crime.

. . . .

Defendant's claim that the trial court failed to explain which side had the burden of proving specific intent has no merit. The trial court's instructions to the jury left no doubt that defendant had absolutely no burdens of proof to satisfy. Similarly, defendant's claim that the trial court did not explain that defendant could not be convicted if there was a reasonable doubt as to his state of mind must also fail. The trial court informed the jury that the prosecution had to prove its case beyond a reasonable doubt.

26

(Rule 5 Mat., *People v. Williams*, No. 204918, at 3-4 (Mich. Ct. App. April 13, 1999) (unpublished per curiam).)

## b. Discussion

Respondent asserts that the jury instruction claims are not exhausted because Petitioner did not fairly present them as federal constitutional claims in his state court appellate briefs, and that the instructions on first-degree murder, second-degree murder, and the beyond-a-reasonable-doubt standard are procedurally defaulted and therefore may not be reviewed because Petitioner has failed to establish cause and prejudice for the state court default.

### i. Procedurally Defaulted Jury Instruction Claims

The United States Supreme Court has explained that the doctrine of procedural default

mandates that

[i]n all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991). The Sixth Circuit has set forth a four-part test for determining whether a prisoner's claim is procedurally defaulted and barred from habeas review. *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). *See also Cooey v. Coyle*, 289 F.3d 882, 897 (6th Cir. 2002). First, the federal habeas court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule. *Maupin*, 785

F.2d at 138. Second, the federal court must determine whether the procedural sanction was actually enforced by the state courts – that is, whether the state courts actually based their decision on the procedural rule. *Id.* Third, the federal court must consider whether the procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim. *Id.* A procedural rule is adequate when it is firmly established and regularly followed[3] at the time it was applied, *Rogers v. Howes*, 144 F.3d 990, 992 (6th Cir.1998), and the rule is an independent basis for disposition of a case if the state courts actually relied on the procedural bar. *Harris v. Reed*, 489 U.S. 255, 261-62, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989). Fourth, if the above three factors are met, the court may still excuse the default and address the merits of the claim if the petitioner can demonstrate that there was cause for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138.

In this case, the Michigan Court of Appeals found Plaintiff's claims either barred or waived pursuant to two state procedural rules. The first rule in question requires defendants to make a contemporaneous objection at trial in order to obtain appellate review of an alleged trial error. *See People v. Stanaway*, 446 N.W.2d 643 (Mich. 1994). This rule has been found to be an adequate and independent state ground, notwithstanding its manifest injustice exception. In other words, the fact that a state court examines whether manifest injustice occurred does not alter the preclusive effect of the procedural bar. *Welch v. Burke*, 49 F.

---

[3]"Regularly followed" does not mean that the procedural rule has been applied in every possible case, as the Supreme Court has indicated that a procedural rule can be sufficient "where it was applied '[i]n the vast majority of cases.'" *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000) (quoting *Dugger v. Adams*, 489 U.S. 401, 410 n.6, 109 S. Ct. 1211, 103 L. Ed. 2d 435 (1989)).

Supp. 2d 992, 1003-04 (E.D. Mich. 1999) (citing *Harris*, 489 U.S. at 263-64; *Engle v. Isaac*, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982); and *Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989)). In Petitioner's case, this rule was violated when his trial counsel failed to object to the jury instruction explaining the deliberation aspect of first-degree murder, and to the instruction on second-degree murder. The last state court to consider Petitioner's claim was the Michigan Court of Appeals, and it enforced the contemporaneous objection rule by stating in its opinion that Petitioner forfeited the issue by failing to object to the instruction as given. Therefore, in order to obtain habeas review, Petitioner must show cause and prejudice or a miscarriage of justice.

Regarding the instruction on reasonable doubt, the appellate court found the claim to be waived based upon the procedural rule that a claim on appeal for which no argument or authority is presented is deemed abandoned. I suggest that this rule is "adequate," because it was firmly established and regularly followed at the time it was applied. *See, e.g., People v. Davis*, 617 N.W.2d 381, 383 (Mich. Ct. App. 2000); *People v. Hermiz*, 597 N.W.2d 218, 223 (Mich. Ct. App. 1999); *People v. Pena*, 569 N.W.2d 871, 877 (Mich. Ct. App. 1997); *People v. Jones*, 506 N.W.2d 542, 546 (Mich. Ct. App. 1993); *People v. Kent*, 486 N.W.2d 110, 112 (Mich. Ct. App. 1992). I further suggest that the rule is "independent" because the state court actually based its decision in Petitioner's case on the procedural rule. Therefore, with respect to this claim as well, in order to obtain habeas review, Petitioner must show cause and prejudice or a miscarriage of justice.

To establish "cause," a petitioner must show that: (1) the factual or legal basis for a claim was unavailable; (2) officials interfered to make compliance with the rule impracticable; or (3) counsel was ineffective. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). To meet the "prejudice" requirement, a petitioner must show "actual prejudice to his defense at trial or on appeal." *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993). Petitioner here alleges that his appellate counsel's failure to raise the jury instruction issues "fully and properly" before the Michigan Court of Appeals rendered his counsel's performance constitutionally ineffective under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and therefore provides "good cause" for his state court procedural default. (Pet'r's Reply, Dkt. 30 at 9-10.) The U.S. Supreme Court has held, however, that a claim of ineffective assistance of counsel may not provide cause for a procedural default if the claim itself has been procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 453, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000). There is no indication in the record that Petitioner has ever raised the issue of ineffective assistance of appellate counsel before the state courts, and therefore he is barred by *Edwards* from arguing it here as cause for the default. Because Petitioner has not demonstrated cause for the default, there is no need to examine the "prejudice" requirement, since both are required.

When a petitioner has failed to demonstrate cause and prejudice, defaulted claims may nevertheless be addressed by a federal court on habeas review if the petitioner establishes that a miscarriage of justice would result from failure to address the merits of the claims. The miscarriage of justice exception applies when a constitutional violation probably resulted

in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 324, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995); *Murray*, 477 U.S. at 496. To demonstrate a fundamental miscarriage of justice, a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has not presented to this Court any new reliable evidence that was not presented at trial, and therefore I suggest that he is not entitled to invoke the miscarriage of justice exception, and that this Court is barred from reaching the substantive merits of these claims.

## ii. Remaining Jury Instruction Claims

The Michigan Court of Appeals addressed Petitioner's claims regarding the jury instructions on the intent element of aiding and abetting, as well as on the issue of reasonable doubt and which side had the burden of proof, and found no error. These claims were not presented to the state courts as federal constitutional issues, however, and therefore are not exhausted. However, I again suggest that the Court address the claims on the merits notwithstanding Petitioner's failure to exhaust state court remedies. 28 U.S.C. § 2254(b)(2).

For these claims to entitle Petitioner to habeas relief, he must show that the state court's decision was contrary to federal law or was based on an unreasonable determination of the facts in light of the evidence presented. The Sixth Circuit has stated that, to warrant habeas relief, jury instructions must have been "so infirm that they rendered the entire trial fundamentally unfair." *Coe v. Bell*, 161 F.3d 320, 329 (6th Cir. 1998). Furthermore, the

Supreme Court has held that, even where a jury instruction amounted to constitutional error, the grant of habeas corpus is only appropriate if the error "had a substantial and injurious effect on the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 146, 119 S. Ct. 500, 142 L. Ed. 2d 521 (1998).

In this case, I suggest that the instructions were not so infirm as to give rise to fundamental unfairness. The fact that an instruction may be deficient in comparison to a state's model jury instruction is not grounds for granting habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). Here, on the issue of aiding and abetting, the trial court gave the following instruction:

> The law also states that any person who shall personally commit an offense or any person who shall procure, counsel or aid and abet another person in the commission of an offense shall be tried and if found guilty, shall be punished as if he directly committed the offense himself. That's known in the law as "aiding and abetting." Which simply means, anyone who helps or encourages another person to commit a crime is just as guilty as the person who commits the crime.
>
> In other words, you help another person to commit an offense, you are as guilty as the person who actually carries it out.
>
> Like, three people go into a bank and hold it up, they're all guilty of holding up the bank.
>
> Suppose somebody plans to do the crime but one person does the planning and he sends the other person out to do the actual field work but he stays behind. The person that does the planning is just as guilty as the person who does the work under the law of aiding and abetting.

(Tr. Trans. Vol. IV at 90.) Petitioner claims that this instruction (1) failed to contain the word "assist" as does the Michigan Criminal Jury Instruction; (2) failed to explain that Petitioner must have assisted or been assisted by other persons; (3) failed to state that the

prosecutor had the burden of proving each and every element of aiding and abetting beyond a reasonable doubt; (4) failed to explain that Petitioner must have had the same specific intent as the accomplice; and (5) failed to correctly inform the jury of the type of intent that applied.

The appeals court found that this instruction properly informed the jury that a finding of aiding and abetting could be made only if the jury found that a defendant or his accomplice knew that the other had the specific intent to commit a crime, and I suggest that this finding is not unreasonable or contrary to federal Supreme Court precedent. Furthermore, regarding the burden of proof, the instructions must be read as a whole, and even if this excerpt did not emphasize who carried the burden of proof, the trial court made it clear at another point in the instructions that "[t]here is no burden on the defendant; defense in any case, all the defendant has to do is show up in the court. In a criminal case the burden is always on the People." (Tr. Trans. Vol. IV at 93-94.)   In light of this admonition, I likewise suggest that the state court's finding that Petitioner's claim that the trial court failed to explain which side had the burden of proving specific intent had no merit was not unreasonable, and did not render Petitioner's trial fundamentally unfair so as to warrant habeas corpus relief. I therefore suggest that the Petition for Writ of Habeas Corpus be denied.

33

## III.   REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

CHARLES E. BINDER
United States Magistrate Judge

DATED:   December 11, 2002

Copies to:   Sheldon Halpern, Attorney at Law, 415 S. West Street, Ste. 200, Royal Oak, MI 48067
Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division,
P. O. Box 30217, Lansing, MI 48909
Honorable David M. Lawson, United States District Judge